AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

| LODGED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 10-05-25 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____dgo_____ DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 10/5/2025 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ___M.B.___ DEPUTY |

United States of America

v.

Lucas CARBAJAL De La Cruz,

Defendant

Case No.   8:25-mj-00823-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 3, 2025 in the county of Orange in the Central District of California, the

defendant violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Deportation. |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Alejandra D'Angelo*
*Complainant's signature*

Alejandra D'Angelo, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        10/5/2025

_____
*Judge's signature*

City and state:   Santa Ana, California

Hon. John D. Early, U.S. Magistrate Judge
*Printed name and title*

AUSA: Lisa Lindhorst

## AFFIDAVIT

I, Alejandra D'Angelo, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of applications for seven separate criminal complaints against and arrest warrants for charging the following individuals (collectively, "defendants"):

      a.    JESUS GUILLERMO ARMENTA MARTINEZ ("ARMENTA MARTINEZ"), with violating 8 U.S.C. § 1324(a)(1)(A)(i) (bringing in/attempting to bring in certain aliens at a place other than a port of entry);

      b.    ANTONIO DE JESUS HERNANDEZ-RAMIREZ ("HERNANDEZ-RAMIREZ"), LUCAS CARBAJAL DE LA CRUZ ("CARBAJAL DE LA CRUZ"), JUAN GUZMAN MONTALVO ("GUZMAN MONTALVO"), and ANTONIO HERNANEZ-ACAT ("HERNANEZ-ACAT"), with violating 8 U.S.C. § 1326(a) (illegal alien found in the United States following deportation); and

      c.    BRENDA YANETH FLORES GONZALEZ ("FLORES GONZALEZ"), and FRANCISCO JAVIER SOLANO SANCHEZ ("SOLANO SANCHEZ"), with violating 8 U.S.C. § 1325(a) (improper entry/attempted improper entry by alien).

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there

1

is sufficient probable cause for the requested complaint and
warrants and does not purport to set forth all of my knowledge
of or investigation into this matter.  Unless specifically
indicated otherwise, all conversations and statements described
in this affidavit are related in substance and in part only, and
all dates and times are on or about those indicated.

## II.  BACKGROUND

3.    I am a Special Agent ("SA") with the Department of
Homeland Security ("DHS"), Immigration and Customs Enforcement
("ICE"), Homeland Security Investigations ("HSI"). I am a
"federal law enforcement officer" within the meaning of Federal
Rule of Criminal Procedure 41(a)(2)(C). I have been employed as
an HSI Special Agent ("SA") since April of 2009.  Before my
employment with ICE/HSI, I was a SA with the U.S. Department of
Health and Human Services, Office of Inspector General, Office
of Investigations ("HHS-OIG") from March 2002 until April 2009.
I was trained at the Federal Law Enforcement Training Center
("FLETC") in the Criminal Investigator Training Program in
Glynco, Georgia.  As part of my training, I also attended a
12-week Immigration and Customs Enforcement Special Agent
Training at FLETC.  During my tenure as an investigator, I have
participated in numerous investigative and law enforcement
operations.  As a result of my training and experience and my
consultations with other criminal investigators, I am familiar
with federal laws and the investigation of violations of these
federal laws.  I have received specialized training in
healthcare fraud, money laundering, asset forfeiture,

immigration document fraud, human trafficking, importation of
narcotics, and employer sanctions in addition to other subjects.
I have a Bachelor of Arts degree from the University of
California, Irvine in Criminology, Law & Society, which has also
provided me with knowledge, skills and abilities in my career as
a Special Agent.

4.   I am currently assigned to the Los Angeles Border
Enforcement Security Taskforce Maritime (LA BEST Maritime) in
Los Angeles, California, and have been so assigned since January
2025. LA BEST is a multiagency task force aimed at identifying,
targeting, and eliminating vulnerabilities to the security of the
United States related to the Los Angeles/Long Beach seaport
complex, as well as the surrounding transportation and maritime
corridors.  My responsibilities include the investigation of
violations of federal criminal laws, including crimes involving
money laundering, narcotics trafficking, smuggling, fraud, and
immigration violations.

### III. <u>STATEMENT OF PROBABLE CAUSE</u>

**A.   Vessel with Seven Illegal Immigrants Interdicted**
**Outside Dana Point Harbor**

5.   On October 3, 2025, at approximately 6:55 p.m., San
Clemente Border Patrol Station received a call from the Maritime
Coordination Center ("MCC") that the United States Coast Guard
("USCG") had interdicted a vessel with seven undocumented
individuals approximately half a nautical mile outside of Dana
Point Harbor that had likely crossed into the United States
illegally.  Specifically, a 25-foot cuddy-cabin fishing boat,

3

white and blue in color with a single outboard engine.  USCG
towed the vessel to Dana Point Harbor located in Dana Point,
California.

6.    At approximately 8:13 p.m., Border Patrol Agent Solin
Chung Agent Chung introduced herself to the group of seven
individuals as United States Border Patrol and began to question
each passenger as to their citizenship.  Agent Chung determined
that all seven were citizens of Mexico.  Agent Chung then
questioned everyone to see if they had the proper documentation
to legally cross into or remain in the United States legally,
each individual stated "no".  She then questioned everyone if
they were in the United States illegally and each individual
stated "yes".

7.    At approximately 8:37 p.m., Agent Chung placed all
subjects under arrest for being illegally present in the United
States without the proper documentation to enter or remain in
the United States legally and all seven individuals were
transported to Murrieta Border Patrol Station ("MBPS") for
further interview and processing.

8.    At the station, the individual's fingerprints and
biographical information were entered into several DHS databases
to verify identity and possible criminal/immigration record
history.

9.    Based on database records, the seven adult subjects
were identified as ARMENTA MARTÍNEZ (A#221421772), FLORES
GONZÁLEZ (A#221421773), SOLANO SÁNCHEZ (A#221421774), HERNÁNDEZ-
RAMÍREZ (A#203270896), CARBAJAL DE LA CRUZ (A#213202438), GUZMÁN

MONTALVO (A#240284491), and HERNÁNDEZ-ACAT (A#246003692). All seven subjects were confirmed to be citizens of Mexico in the United States illegally.

**B.   All Seven Immigrants Admit in Mirandized Interviews to Illegally Entering the United States**

10.   HSI SAs Alejandra D'Angelo and Krysta Walicki and Task Force Officers Randy Cornejo and Keo Phillips responded to Murrieta Border Patrol Station to interview all subjects in Spanish.  Each interview was recorded.  Miranda warnings were administered and waived, and consular notifications provided. Only material admissions relevant to statutory elements are summarized.

1.   8 U.S.C. § 1324(a)(1)(A)(i) Defendant

11.   ARMENTA MARTINEZ made the following relevant statements, among others, during his interview:

a.   ARMENTA MARTINEZ confirmed his true name and confirmed that he is a citizen of Mexico.  He admitted he knew he was making illegal entry in the United States at the time of apprehension on October 3, 2025, but stated that he has an active tourist visa that he has had for about a year, but misplaced it.  As of the filing of this affidavit I have been unable to find any record of such a visa. ARMENTA MARTINEZ admitted he never reported the visa lost.  He claimed no fear of returning to Mexico.  He admitted he was the one operating the vessel and said he was chosen as the driver by the people who arranged for the boat because they believed he had experience driving boats as a fisherman.  He said that the ones who

5

arranged for the boat gave him a phone with an address to drive the boat to, and he admitted that he was told that if he drove the boat he would have to pay only half of the smuggling fee. ARMENTA MARTINEZ said he intended to go work for his friend, Victor CARBAJAL, in Los Angeles. said he had received a call from a man called "HABLAR" who coordinated the smuggling event. ARMENTA MARTINEZ claimed another person on the boat was communicating with the pickup crew. ARMENTA MARTINEZ gave consent to search his phone, which revealed the contact number for "HABLAR."

        2.    <u>8 U.S.C. § 1326(a) Defendants</u>

    12.  GUZMAN MONTALVO made the following relevant statements, among others:

        a.    GUZMAN MONTALVO confirmed his name and confirmed that he is a citizen of Mexico. He admitted that he has been deported from the United States to Mexico before and he never had any documents to enter or remain in the United States. GUZMAN MONTALVO confirmed that he knew he was entering the United States illegally at the time of apprehension on October 3, 2025. GUZMAN MONTALVO stated his purpose of entry was to work for a friend named Lucas Adrian LOZA in Las Vegas. LOZA was the one who made arrangements for GUZMAN MONTALVO's crossing, but GUZMAN MONTALVO claimed he does not know who LOZA made arrangements with or how much he paid, but that the amount paid to smuggle him into the United States would be taken out of GUZMAN MONTALVO's earnings when we began work. GUZMAN MONTALVO

6

stated he was driven by an unknown man to the boat and that he did not know where he boarded the boat.

    13.  HERNANDEZ-RAMIREZ made the following relevant statements, among others, during his interview:

        a.  HERNANDEZ-RAMIREZ admitted his true name and that he is a citizen of Mexico. He admitted he has never applied for immigration documents to enter the United States and that he knew he was illegally entering the United States.  He admitted he is not afraid to return to Mexico.  HERNANDEZ-RAMIREZ stated that he was deported from the United States to Mexico on or about February 2025.  The last time he entered the United States was when he was three years old. His parents brought him to United States and resided in Quincy, Washington.  HERNANDEZ-RAMIREZ stated that he had a Lawful Permanent Resident card, but it was taken away due to crimes he had committed.  HERNANDEZ-RAMIREZ's purpose for entering the United States was to see his children, who reside in Quincy, Washington.  HERNANDEZ-RAMIREZ said that he did not make the arrangements of his trip and that an unknown person gave him the details.  HERNANDEZ-RAMIREZ boarded the boat in Tijuana, Mexico, at 11:00 a.m. and he did not know any of the other people on the boat. HERNANDEZ-RAMIREZ claimed he was never told what his fee for being smuggled into the United States would be, but that once he crossed over an unknown person would call him on his cell phone and tell him the fee.  HERNANDEZ-RAMIREZ also said that the alleged smugglers instructed him to delete all of his texts and calls.

14.   CARBAJAL DE LA CRUZ made the following relevant statements, among others, during his interview:

a.    CARBAJAL DE LA CRUZ admitted his true name and that he is a citizen of Mexico.  He admitted he has never applied for immigration documents to enter the United States and that he knew he was making an illegal entry by entering the United States on October 3, 2025.  He admitted that he was deported from the United States approximately fifteen days ago. CARBAJAL DE LA CRUZ's purpose for entering the United States was to see his pregnant fiancée, who lives in Santa Barbara, California.  CARBAJAL DE LA CRUZ said he is afraid to return to Mexico due to the sicarios who want to force him to work for them.  He also said he did not make the arrangements himself to be smuggled into the United States, but rather learned the details from strangers at the beach in Ensenada.  Following their instructions, he boarded the boat around noon and did not know any of the other people on the boat.  CARBAJAL DE LA CRUZ did not know his fee for being smuggled into the United States but was told that once he arrived in the United States, an unknown person would call CARBAJAL DE LA CRUZ and tell him the fee.

15.   HERNANDEZ-ACAT made the following relevant statements, among others:

a.    HERNANDEZ-ACAT confirmed his name and confirmed that he is a citizen of Mexico.  HERNANDEZ-ACAT admitted that he knew he was illegally entering the United States and that he has no legal immigration documents that allow him to remain here. He

admitted that he was deported from the United States to Mexico approximately two to three years ago.  HERNANDEZ-ACAT admitted he had not applied for or requested permission to re-enter the United States.  He also admitted to being illegally present for four months around June of 2025 but said he had returned to Mexico before detection.  HERNANDEZ-ACAT stated that he has no fear of returning to Mexico.  He stated that once the boat arrived, his plan was to head to Upton, Wyoming to work in roofing. His friend back in Mexico Jose Ramirez Vasquez made all the arrangements to smuggle him into the United States, which was going to cost him approximately $10,870 USD.  HERNANDEZ-ACAT said a masked man picked him up in Tijuana in an enclosed pickup truck.  On that same date HERNANDEZ-ACAT was taken to an unknown location where he boarded the boat that brought him to the United States.  HERNANDEZ-ACAT said that he had boarded the boat the same day that he was apprehended.

     3.   8 U.S.C. § 1325(a) Defendants

16.  FLORES GONZALEZ made the following relevant statements, among others:

    a.   FLORES GONZALEZ confirmed her name and confirmed that she is a citizen of Mexico.  FLORES GONZALEZ said she knew she was making illegal entry in the United States at the time of apprehension and confirmed she has never had any documents that would allow her to legally enter or remain in the United States. FLORES GONZALEZ claimed no fear of returning to Mexico. GONZALEZ stated her purpose of entry was to work on a farm near Los Angeles.  When asked what the fee was for being smuggled

into the United States, she said $8,000 USD.  The money she owed

for crossing would be taken from her earnings and she was told

to erase her phone before boarding the boat.

17.  SOLANO SANCHEZ made the following statements during

his interview, among others:

a.  SOLANO SANCHEZ admitted his true name and that he

is a citizen of Mexico.  He admitted that he has no legal

immigration documents that allow him to remain in the United

States.  He admitted he had no fear of returning to Mexico.  He

admitted that he entered on October 3, 2025, on a boat and was

heading to Seattle to work in construction.  He admitted he knew

it was illegal to enter the United States without permission.

He admitted he was planning to pay $10,000 USD for being

smuggled into the United States.  He also expressed a desire to

stay in the United States to work.

**C.    Record Checks Confirm Prior Deportations of Four of the**
**Illegal Immigrants**

18.  Database checks revealed the following regarding

HERNANDEZ-RAMIREZ, CARBAJAL DE LA CRUZ, GUZMAN MONTALVO, and

HERNANDEZ-ACAT:

a.  HERNANDEZ-RAMIREZ's fingerprints were taken at

the MBPS, and they matched the fingerprints and name contained

in the A-file (A#203270896).  HERNANDEZ-RAMIREZ also appears to

be the same person as the photographs in A-file (A#203270896).

He was found by immigration officers to be inadmissible pursuant

to Section 212 (a)(6)(A)(i) of the INA and was removed from the

United States to Mexico on February 27, 2025 from Medford,

10

Oregon.  I also confirmed through conviction records that on
December 4, 2023, HERNANDEZ-RAMIREZ was convicted in the State
of Washington for Conspiracy to Deliver Cocaine and been
sentenced to nine months in jail.

        b.    CARBAJAL DE LA CRUZ's fingerprints were taken at
the MBPS, and they matched the fingerprints and name contained
in the A-file (A#213202438).  CARBAJAL DE LA CRUZ also appears
to be the same person as the photographs in A-file
(A#213202438).  He was found by immigration officers to be
inadmissible pursuant to Section 212 (a)(6)(A)(i) of the INA and
was removed from the United States to Mexico on January 19,
2020, from San Ysidro, California. Following that deportation,
he was again found by immigration officers in the United States
and again determined to be inadmissible pursuant to Section 212
(a)(6)(A)(i) of the INA and was removed from the United States
to Mexico on September 19, 2025, from San Ysidro, California.

        c.    GUZMÁN MONTALVO's fingerprints were taken at the
MBPS, and they matched the fingerprints and name contained in
the A-file (A#240284491).  GUZMÁN MONTALVO also appears to be
the same person as the photographs in A-file (A#240284491). He
was found by immigration officers to be inadmissible pursuant to
Section 212 (a)(6)(A)(i) of the INA and was removed from the
United States to Mexico on September 24, 2025 from San Diego,
California.

        d.    HERNÁNDEZ-ACAT's fingerprints were taken at the
MBPS, and they matched the fingerprints and name contained in
the A-file (A#246003692).  HERNÁNDEZ-ACAT also appears to be the

11

same person as the photographs in A-file (A#246003692).
HERNÁNDEZ-ACAT was found by immigration officers on 1/17/23 and
determined to be inadmissible pursuant to Section 212
(a)(6)(A)(i) of the INA and was removed from the United States
to Mexico on January 18, 2023, via Nogales, Arizona.

19.  There is no record of any application nor permission
from the Secretary of Homeland Security or the U.S. Attorney
General for any of the four individuals referenced above
(HERNANDEZ-RAMIREZ, CARBAJAL DE LA CRUZ, GUZMAN MONTALVO, or
HERNANDEZ-ACAT) to enter the United States.  Based upon my
training and experience, as well as the training and experience
of other law enforcement personnel involved in this
investigation, I know that a record reflecting such an
application or permission would ordinarily be found within the
DHS indices reviewed.

### III. CONCLUSION

20.  For the reasons described above, there is probable
cause to believe that ARMENTA MARTINEZ violated 8 U.S.C.
§ 1324(a)(1)(A)(i) (bringing in/attempting to bring in certain
aliens at a place other than a port of entry); that HERNANDEZ-
RAMIREZ, CARBAJAL DE LA CRUZ, GUZMAN MONTALVO, and HERNANDEZ-
ACAT violated 8 U.S.C. § 1326(a) (illegal alien found in the
United States following deportation); and that SOLANO SANCHEZ
///

12

and FLORES GONZALEZ violated 8 U.S.C. § 1325(a) (improper

entry/attempted improper entry by alien).


                                          /s/ ALEJANDRA D'ANGELO
                                        _____
                                        Alejandra D'Angelo
                                        Special Agent,
                                        Homeland Security
                                        Investigations



Attested to by the applicant in
accordance with the requirements
of Federal Rule of Criminal
Procedure 4.1 by telephone on
this 5th day of October 2025.



_____
HON. JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE

13